UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| | Case No. 17-12226 (MFW) |
| MAC HOLDING, LLC, | |
| | Courtroom No. 4 |
| | 824 North Market Street |
| | Wilmington, Delaware 19801 |
| Reorganized Debtor. | December 9, 2019 |
| | 10:30 A.M. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Elizabeth Justison, Esquire<br>Ryan Bartley, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR<br>1000 North King Street<br>Wilmington, Delaware 19801<br><br>- and -<br><br>Michael Neumeister, Esquire<br>GIBSON DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071 |
| Audio Operator: | AL LUGANO |
| Transcription Company: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>(302)654-8080<br>Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES (Continued):

For Talat Gabriel: Christopher Loizides, Esquire
LOIZIDES, P.A.
1225 North King Street
Wilmington, Delaware 19801

For Morgan & Morgan: Michael Busenkell, Esquire
GELLERT SCALI BUSENKELL & BROWN
1201 North Market Street
Wilmington, Delaware 19801

- and -

Camille Iurillo, Esquire
IURILLOW LAW GROUP
5629 Central Avenue
St. Petersburg, Florida 33707

INDEX

#5) Motion of Talat Gabriel for Relief from Confirmation Order Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024 and/or for a Declaration that the Plan Injunction Does Not Apply [D.I. 176, 10/1/19].

**Ruling: 59**

| EXHIBITS: | ID | Rec'd |
|---|---|---|
| Declaration of Maury Cuje/Exhibit 2 | | 57 |

(Proceedings commenced at 10:30 a.m.)

THE CLERK: All rise. Please be seated.

THE COURT: Good morning.

MS. JUSTISON: Good morning, Your Honor. Elizabeth Justison of Young Conaway Stargatt & Taylor for the reorganized debtors.

My co-counsel, Mike Neumeister of Gibson Dunn, is here today, along with my colleague, Ryan Bartley of Young Conaway.

The reorganized debtor's vice president and corporate counsel, Maury Cuje, is on the line. She is the declarant in support of both of the claim objections and one of the declarants for the reorganized debtor's opposition to Mr. Talat's motion for relief from the confirmation order.

THE COURT: Okay.

MS. JUSTISON: Your Honor, thank you for entering orders approving items three and four on the agenda. With that, there are three remaining items: the two uncontested claim objections and Mr. Talat's motion. We propose to proceed in the order of the agenda.

THE COURT: All right.

MS. JUSTISON: Item number one on the agenda is the reorganized debtor's third omnibus non-substantive objection to claims. Through this objection, the reorganized debtor seeks to disallow certain claims that were filed after

the applicable bar dates or that were amended and superseded by subsequently filed proofs of claim.

We did not receive any responses to this claim objection and the proposed order has been uploaded.

THE COURT: Well, I have the -- with respect to the late claims, the state of New Jersey’s is one day late and the Kentucky one is one day late, right?

MS. JUSTISON: And I believe that’s correct, Your Honor. They were pretty close to the bar date. And we also provided notice of the claim objection and they did not respond.

If you like us to remove them, we will.

THE COURT: I think you should.

MS. JUSTISON: Okay. We’ll do that. Leave all of the revised -- those exhibits and submit a revised order under COC.

THE COURT: Okay. The other exhibit was fine.

MS. JUSTISON: Thank you, Your Honor.

The next item on the agenda is the reorganized debtor’s fourth omnibus substantive objection to claims. Through this objection, the reorganized debtor seeks to reclassify certain claims that asserted an unwarranted priority status to disallow certain claims for which the debtors are not liable in full and to modify the amount of certain claims that assert higher amounts than the amounts

reflected on the debtor’s books and records or supported by the documentation attached to the claims.

We did receive one response to this claim objection from the state of Ohio. In the response itself, the state of Ohio confirmed that it doesn’t object to the treatment and we also conferred with the state of Ohio and they confirmed the same.

So, we submitted the order under certification of counsel. The proposed order has been uploaded. Unless Your Honor has any questions, we ask that the court enter an order sustaining the objection.

THE COURT: Okay. Well I had some issues on -- let’s see which exhibit this is. It’s the no liability exhibit, is that Exhibit B?

MS. JUSTISON: I believe that’s right, Your Honor. Exhibit 2.

THE COURT: Okay. Well, I see that these -- the basis for the claim disallowance, for example, for Mr. Blaylock is that he hasn’t alleged any facts but the attachment to his claim -- is that the first one?

MS. JUSTISON: It is.

THE COURT: Has an -- the attachment has an unpaid invoice within the relevant period. Let me find it, according to my law clerk.

Let me go through all of these and Cascade again

attaches a statement that the claim is secured by a lien on property and gives you the parent claim number or the statute number. This is a township claim.

Kentucky, again, has an attached statement.

Louisville has an attached statement.

Ohio has agreed to it.

State of Nevada. Again, these have statements so simply saying the debtor's records don't show any due. I need more from you on why you think that amount is not due.

MS. JUSTISON: We understand Your Honor. Would it be acceptable if we submitted a supplemental declaration expanding on this and adjourn these to the next hearing on a supplemental order?

THE COURT: Yes.

MS. JUSTISON: Thank you, Your Honor.

The next item on the agenda is Mr. Talat's motion for relief from the confirmation order; however, my co-counsel, Mr. Neumeister, would like to make a comment about the joinder that was filed last night before we turn over the podium. I'll turn it over to him now.

THE COURT: Okay.

MR. NEUMEISTER: Good morning, Your Honor. Mike Neumeister with Gibson Dunn on behalf of the reorganized debtors.

As this is Mr. Loizides' client's motion, we'll

let him proceed first on the motion, but I do rise -- I do want to speak first on the issue of a late joinder that was filed last night.

The joinder was filed by Morgan & Morgan. They're the prior counsel for Mr. Gabriel. I move to strike that joinder for two grounds. One, it is extremely untimely. Mr. Gabriel's motion has been pending for over two months now. There's just simply no basis to jam the reorganized debtors like this on the eve of the hearing. And, second, Morgan & Morgan isn't a party in interest. They don't have standing.

I read your A&C decision. There is no kind of legal or contractual relationship between Morgan & Morgan and the debtors. They don't have standing. They don't have a dog in this fight. Their late joinder should be stricken.

THE COURT: Any response?

MR. BUSENKELL: Good morning, Your Honor. Michael Busenkell of Gellert Scali Busenkell & Brown on behalf of Morgan & Morgan.

I'd like to introduce to the court my co-counsel, Camille Iurillo from the Iurillo Law Group in Tampa. To the extent we haven't already, and I think we may have, her *pro hac* papers will be filed, but for today's purposes, I'd ask that she be allowed to address the court.

THE COURT: She can be heard.

MR. BUSENKELL: Thank you, Your Honor.

THE COURT: Thank you.

MS. IURILLO: Thank you, Your Honor. Camille Iurillo on behalf of Morgan & Morgan of Tampa.

I'd like to explain to the court first why Morgan & Morgan of Tampa is an interested party.

Part of the present law firm representing -- scratch that.

Morgan & Morgan of Tampa was the law firm representing Talat Gabriel at the time of the bankruptcy. Morgan & Morgan did file a claim. It was a late filed claim.

There's a number of reasons why Morgan & Morgan is a party in interest. First, there are some allegations in the debtor's objection that quote some statements made by the attorney for Talat Gabriel that there may be claims of legal malpractice against Morgan & Morgan for the filing of the late claim. We, obviously, contest that, but --

THE COURT: Well why is that relevant to today?

MS. IURILLO: Thank you, Judge, yes.

The point is Morgan & Morgan is seeking the exact same relief as Gabriel, that is relief from the discharge injunction or a finding that the discharge injunction does not apply so that the tort claimant, Gabriel, can proceed against the insurance proceeds and not against the debtors.

So, for today's purposes --

THE COURT: But that's not your right. That's the

creditor's right.

MS. IURILLO: The reason why, and I agree, Your Honor. The reason why we are an interested party is that we believe the appropriate forum for relief for our prior client, Mr. Gabriel, is against insurance.

To the extent that should be --

THE COURT: That's the merits.

MS. IURILLO: To the extent that that would be denied, then apparently Mr. Gabriel's backup is to sue Morgan & Morgan for legal malpractice. As a result, Morgan & Morgan has a clear stake in the results of the hearing today.

If the relief is sought, if there's insurance available then there would be no -- assuming there are merits to the legal malpractice claim, then there would be no need to go after Morgan & Morgan. It benefits Talat Gabriel. It benefits Morgan & Morgan. And, to that extent, the interest is aligned. They're an interested party in the outcome.

If the account outcome is contrary to what Mr. Gabriel wants, it is contrary and against the interest of Morgan & Morgan. So, they are an interested party because they are clearly directly impacted by the ruling of the court today.

THE COURT: Response to that?

MS. IURILLO: Could I, Your Honor, respond to the second, the other point?

THE COURT: You have more -- another, yes.

MS. IURILLO: The other point was the untimeliness of the joinder. The issues raised in the joinder are merely an expansion of the issues raised and the law raised by Gabriel, so there's nothing new. There's no surprise, there's no burden.

Thank you, Judge.

THE COURT: Okay.

MR. NEUMEISTER: Your Honor, two quick points. Counsel's argument is effectively that Morgan & Morgan is a creditor of a creditor, of Mr. Gabriel. I think your A&C decision kind of addresses that exact point. That's not standing. They don't have standing from the basis of being a creditor of Mr. Gabriel.

And then in terms of timing and prejudice, I respectfully disagree. The joinder cites completely different arguments that were put forth in the motion and in Mr. Gabriel's reply. It's just improper and there's no reason to allow them to proceed today.

THE COURT: Well, I agree with the debtor that I don't find Morgan & Morgan has any standing to be heard here today, but I will hear from the creditor who is the one with the standing.

MS. IURILLO: Thank you, Your Honor.

THE COURT: Thank you.

MR. LOIZIDES: Good morning, Your Honor. For the record, Chris Loizides for Talat Gabriel. This is on the motion for relief from the discharge or for declaration of the discharge does not apply.

Before turning to the merits of the motion, I just wanted to go over the procedural posture. I've had some discussions with Mr. Neumeister about this. And that is that while this is not, of course, a stay relief motion technically, it's sort of on all fours with the sorts of stay relief motions that the court often sees.

There, of course, is a local rule that says in those sorts of situations, the first hearing would be preliminary, not in a sense that it's a status conference, but in the sense that, as I understand it, if the court --

THE COURT: No evidence.

MR. LOIZIDES: There's no testimony here today, Your Honor. So if the court believes that the record needs to be supplemented or there are material facts in dispute that require a further hearing, we would basically come back. So if that's okay with Your Honor, I'd just like to proceed then with argument.

THE COURT: That's fine.

MR. LOIZIDES: Just a preliminary point here, Your Honor, I was a little surprised at the extent of opposition to this motion. I mean the sort of relief that we're

requesting to pursue insurance proceeds and not go out to the debtor personally, by a personal injury claimant, that relief, I know I have personally filed dozens, maybe more motions over the years. I would suspect Your Honor has signed hundreds, maybe more, orders granting similar relief. Typically, these are stay relief motions, but a lot of them are discharge relief motions.

The main thrust of the opposition is that there is a $100,000 dollar SIR under this policy. But policies -- find me an insurance policy that doesn't have a deductible or an SIR. They all have deductibles or SIR's.

I understand that there is a technical distinction in the sense that an SIR is a condition of coverage, at least, my understanding, and a deductible is essentially a limitation on coverage, but I don't see in the cases or the practice any real distinction between those two.

We did cite in my reply and I acknowledge there was no actual decision there, Coach America case where you had a $5 million dollar per occurrence deductible under those policies. And those deductibles were supported by $39 million dollars of letters of credit which were secured on estate assets. Those were resolved consensually, but Judge Gross made some pointed comments prior to that sort of consensual resolution.

And just to echo that, just as those people did

not make a business decision of to have a $5 million dollar per occurrence deductible when they injured my client who walked into a national chain restaurant almost four years ago and had the ceiling collapse on his head causing very severe injuries did not make a business decision essentially to have -- be faced with no insurance due to $100,000 dollars SIR which sort of brings me again to the central point here, and that is Mr. Gabriel is agreeing to limit his recovery to applicable insurance proceeds. We’re not seeking any other relief here.

The relief is being sought under three bases. First, we have raised issues as to service of process due to the fact that I think the record reflects that the debtor’s own served counsel and did not serve Mr. Gabriel personally which is certainly required under Rule 9014.

Second, we are seeking, to the extent necessary, modification of either the discharge or plan injunction.

Third, though, and probably most importantly, we’re seeking essentially a declaration that the discharge and, therefore, the plan injunction basically don’t apply here.

It’s theoretically possible if we had requested it that the court could grant us further relief if the court were to rule in our favor on the first -- on either of the first two basis. But, again, we’re not requesting any relief

other than the ability to pursue insurance proceeds under any theory.

And so, for that reason and because I think it's probably our strongest theory, I just like to focus on the third theory that the discharge basically doesn't apply here.

And I think that the decision that is most instructive or one decision that is very instructive in this area is Judge Carey's decision in the Select Build (phonetic) case which we cited in our materials.

In Select Build, a group of injured employees of the debtor which was Select Build which was as subcontractor brought suit against a general contract, Ryland, for prepetition injuries sustained while they were lifting a balloon wall.

In the prepetition construction contracts, Select Build was obligated to indemnify Ryland for such suits and to procure an insurance policy under which Ryland was named as an additional insured. Ryland sought to be indemnified under that policy with Ace Insurance. The reorganized debtors brought suit against Ryland to enforce the discharge and plan injunction.

Importantly, this was sort of an -- I don't know how unusual, but it struck me as somewhat an unusual situation and that is you had a -- there was $100,000 dollar SIR but, in addition, there was a $1.9 million dollar

deductible and a $1.9 million dollar policy limit. And the deductible there was, as in the Coach America case was also secured supported by letters of credits secured on estate assets.

So, I think what essentially was happening here is that even though the claimant was saying I'm only seeking to recover insurance, the economic impact of this was a dollar for dollar recovery against estate assets which, by the way, is not our piece here.

Even under one of the worst possible scenarios for the debtors, they might have to put out some money to defend, and I would argue even that's not really true. But, in any event, it's certainly nowhere near as draconian as what happened in Select Build.

This court relying on the Third Circuit's decision in Mecatear (phonetic) -- I'm not sure how to say that -- and the Seventh Circuit decision in Harker's, held first that the discharge does not affect liability of the debtor's insurers.

The court quoting an earlier Seventh Circuit Decision, Hendrix vs. Paige (phonetic), notes that, "As to whether such an injunction extends to a suit only nominally against the debtor because the only relief sought is against insurance, the cases are pretty near unanimous that it does not."

The court concluded that the discharge did not

prevent Ryland from recovering on the Ace policy. In reaching that conclusion, the court highlighted certain provisions of the debtor's plan and from the policy itself.

And this is directly from the decision and the court is quoting from the plan here.

"The plan provides that notwithstanding anything in the plan to the contrary including without limitation any other provision that purports to be preemptory or supervening or grants an injunction or release, insurance policies and agreements are treated as executory contracts under the plan. And all references to executory contracts and insurance policies and agreements and the applicable reorganized debtors shall be deemed to have assumed in accordance with Section 365 of the Bankruptcy Code all such insurance policies and agreements."

So, essentially, the insurance contracts were being assumed under this plan. Well that is some more to our case, Your Honor, where under the plan of reorganization that Your Honor confirmed in Article IX, Section (k), it states that,

"Except as otherwise provided herein, the debtor's discharge and release from all claims as provided here in except as necessary to be consistent with this plan shall not diminish or impair the enforceability of any insurance policy that may cover claims against the debtors or the reorganized

debtors."

At the end of the opinion, while acknowledging the burden to pay Ryland's entire claim may fall on the reorganized debtors, Judge Carey states, "It is an obligation for which the reorganized debtors specifically agreed to remain responsible under the confirmed plan."

Similarly, it cannot violate the discharge here if the only affect of Mr. Gabriel's pursuit of the insurance proceeds is that the debtors will be obligated to perform under an assumed executory contract.

That's just a matter of common sense. How could it be a violation of the discharge to have to adhere to a contract that the debtors voluntarily assumed.

This court in Select Build also stressed that the Ace policy itself provided, and I'm quoting against from the decision -- and this was a quote from the policy -- excuse me, Your Honor.

"Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this policy."

This case, Your Honor, the Liberty Mutual policy was attached to the response. I did not quote this in the reply, but this is a quotation from Section (4)(1). It states, "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under

Section one coverages to pay damages in excess of the self-insured amount to which this coverage part applies."

So, again, in both policies, Your Honor, you have a clause that states that the policy remains enforceable, notwithstanding the bankruptcy; in addition to the fact that the plans in both cases provided for the assumption of the policies.

The final note I'd like to make on Select Build, at the end of the decision, the court refers to two earlier decisions that Judge Carey had made on motions brought by Weis Builders and Syntax (phonetic).

The Syntax motion, I believe, is the one that is referred to in the transcript that the debtors attached to their response. Judge Carey distinguishes those earlier cases partly because the request was:

"Inextricably tied to requests to enlarge the bar date to accommodate the filing of late claims against the debtors by the movants. The claimants in Select Build by contrast did not seek to file late claims."

And, of course, Mr. Gabriel here, similarly, is not seeking to file a late claim.

So, I think for all of those reasons, Your Honor, our case is really on all fours with the Select Build decision. And as I've argued, I don't think the fact that the debtors may conceivably have liability due to the

assumption of this -- due to their voluntary assumption of the insurance policies means that this claim to insurance somehow violates the discharge.

You know the debtors complain that this would mean that my client would essentially recover on a dollar for dollar basis on a prepetition claim while preliminarily, Your Honor, that's what happens when you have insurance. Secondly, the policy in question is strictly for a prepetition period. The only claims that could possibly be covered by that policy are prepetition claims. And, again, this was a voluntarily assumed contract.

But there are, however, some distinctions with Select Build but I think those distinctions actually cut in our favor. I would point out that in Select Build, there was essentially no dispute that the debtors would be liable on a dollar for dollar basis.

Here, we're not talking about that. We are talking only about defense costs up to $100,000 dollars. And even their debtor's position is not really supported by the terms of the policy.

Section (6)(1) upon which the debtors rely does say that the debtors have a duty to defend. But then the question is what is the consequence for the failure to meet that obligation? It doesn't say that Liberty Mutual is entitled to be reimbursed or something like that. What it

says is that the coverage is void.

Now, here I am going to refer, if I may, to the filed joinder, but I don't think this is really controversial. There are many decisions that say that notwithstanding a provision like that that the insurance -- notwithstanding the failure to meet an SIR, the insurance company is still on the hook.

Maybe the bigger answer to that, though, is, to some extent, that's my client's problem. We would sue in Florida. I suppose the insurance company might raise this as a defense. We don't think they would get too far under applicable law.

But, as I said, there are many decisions that say that notwithstanding this kind of language, the claimant can still recover, to the extent that the claim exceeds the SIR.

I'd also, as a final point, Your Honor. There's been -- there's no direct evidence in this record that Liberty Mutual has refused to waive the SIR or insisting that the debtors bear defense costs. That being said, it wouldn't surprise me if they are taking that -- that doesn't surprise me that they are apparently taking that position.

But, nevertheless, I would say regardless, to meet that with a certain degree of skepticism. The debtor here has no incentive whatsoever to defend this claim because this claim is a -- well, if we're wrong about our service of

process argument, this is a discharge claim and, therefore, the debtor cannot be held liable for one penny.

Oh, and by the way, even if it's not a discharge claim, we're not seeking to hold (indiscernible) again. So, they have no incentive to do that.

In addition, Section 6.1 of the policy only says that the only way that they violate that is if they permit a default to be entered through negligence or intentional conduct.

We don't have to do a whole lot when you're defending a lawsuit just to avoid a default. And that's all the debtors -- even if they have to do anything, and I'm not sure they have to do anything, but even if they have to do something, all they have to do is avoid a default. That's not much.

I think, notwithstanding, whatever Liberty Mutual is saying now, it would not make sense for them to do anything other than to defend this lawsuit. But I think this is all part of the broader point, Your Honor, that as in Select Build, you have an assumed insurance contract. The debtors may have liability under that. In Select Build, it seemed like it was one hundred percent clear. Here, it's much less clear and, in any event, it's limited to defense costs and limited to $100,000 dollars maximum.

So, for all of these reasons, Your Honor, the

relief we seek would not violate the discharge injunction. To the extent it does, the only thing that we would be seeking is really a technical modification of the plan injunction to permit us to name the debtor as a nominal party in order to collect insurance proceeds.

That's all I have, Your Honor, unless the court has any questions.

THE COURT: No thank you.

MR. LOIZIDES: Thank you, Your Honor.

MR. NEUMEISTER: Good morning, Your Honor.

THE COURT: Good morning.

MR. NEUMEISTER: So, I think that the presentation we just heard is instructive because it confirms one of the fears that the debtors have -- reorganized debtors have in filing its objection to the motion, in the first place.

While in their reply, they say that the only relief that -- all that Mr. Gabriel and his counsel are attempting to do is to name the defendants as nominal parties. That just is not the case and I think that representation by the counsel just confirmed that.

What Mr. Gabriel is attempting to do is to get around a very clear unambiguous discharge under the plan and confirmation order and an injunction against commencing any further action with respect to those discharge claims against the debtors. They are trying to liquidate that claim.

They're trying to adjudicate liability against the reorganized debtors.

Sure, they're saying that they only want to proceed with respect to liability against the insurers, but counsel just acknowledged, there is some risk that there's going to be some obligation of the debtors to undertake defense costs or to take some actions to avoid a default.

That is not what a nominal party is. That is how that Mr. Gabriel has framed the relief they're seeking in their reply. It's just not correct. So, I'll go through that in more detail later in my presentation.

THE COURT: But they did say they'll take the risk if you don't defend.

MR. NEUMEISTER: I'm sorry, what?

THE COURT: They say they'll take the risk if you don't defend.

MR. NEUMEISTER: They will take the risk if they don't defend, but the reorganized debtors are still left with risk with respect to the carrier. We don't know what the carrier will do if we have to incur some sort of defense cost in defending the claim. It imposes potential risk with respect to a claim or obligation in defending a claim that we don't know.

Sure, if the -- if Liberty Mutual refuses to provide coverage with respect to the underlying claim, then

Mr. Gabriel gets nothing.

THE COURT: Okay.

MR. NEUMEISTER: But in the interim, we're left with this risk of having a discharge claim that we shouldn't be here dealing with that we have an obligation under the policy to defend. And then if we just allow it to default, then we face whatever potential liability that the insurer has against us. So, it's not just Mr. Gabriel that's facing risk. It's also the reorganized debtor.

THE COURT: Well what claim would the insurer have against the debtor if it fails to defend?

MR. NEUMEISTER: Well we would have default -- we have an obligation under the policy --

THE COURT: And what claim would they have if you don't defend?

MR. NEUMEISTER: At a minimum, they would have the ability to void coverage.

THE COURT: Okay. So that doesn't affect you since they're not pursuing a claim against you.

MR. NEUMEISTER: I don't know what other common law or insurance related claims they might seek against us or if it could affect other years of policies. I don't know. But the fact of the matter is is that it is risk on a claim that we should not face in light of the clear and ambiguous language of the discharge and the injunction under the plan

in the confirmation order.

THE COURT: Are there any other claims under the insurance policy that are proceeding?

MR. NEUMEISTER: Not that I'm aware of now, but we thought that there wasn't going to be this claim either, so you never know what's going to come out of the woodworks.

THE COURT: So, there are no claims under that policy for prepetition lawsuits that were filed?

MR. NEUMEISTER: My understanding is that any claim that would have been under the original -- under that policy has been resolved through the plan. I think that under the plan that Your Honor confirmed the personal injury claims against the debtors that were covered by that policy were all resolved through the claims allowance process which is how they should have been --

THE COURT: Well but remember that bankruptcy court doesn't have jurisdiction over PI claims.

MR. NEUMEISTER: Correct.

THE COURT: But you resolved these consensually?

MR. NEUMEISTER: The reorganized debtors did not. The plan trustee that was set up under the confirmed plan was in charge of reconciling personal injury claims and my understanding is that all those personal injury claims were resolved consensually.

THE COURT: All right, I'm sorry to interrupt.

MR. NEUMEISTER: No, no problem, Your Honor. It's important questions to get through.

In addition to -- and, again, I'll get to the merits of the SIR issue.

In addition to that, the motion is flawed in that it's untimely and it seeks relief that it's not permitted to seek. It doesn't have standing to seek modification of the plan or the confirmation order.

THE COURT: Why doesn't the creditor have standing to seek relief from the discharge injunction?

MR. NEUMEISTER: So, I think that in the -- in your Vencore decision, there was an attempt by creditors to get relief from releases that were granted in favor of nondebtor third-parties. And I think as part of that plan, the creditors were enjoined from seeking claims or pursuing those claims against the nondebtors.

THE COURT: Well did your plan give releases to the insurance company?

MR. NEUMEISTER: No, but --

THE COURT: Give third-party releases to the insurance company?

MR. NEUMEISTER: No, it absolutely did not. We're not attempting to. And, again, we assumed the insurance policy, but we did not assume the claim by claimant. That claim by Mr. Gabriel was discharged.

We did not get --

THE COURT: But was the claim of the creditor against the insurance carrier discharged? There was no third-party release?

MR. NEUMEISTER: No, they did not -- Mr. Gabriel did not release the insurance company of any claim. But they are not attempting to seek a direct claim against the insurance policy. They are attempting to seek a claim against the reorganized debtor, liquidate that claim, and then try and seek recovery from insurance policies.

During that period, though, there is a risk that we will have defense obligations or, otherwise, end up crossways with our insurance carrier.

THE COURT: But they're agreeing that all they want to do -- they're asserting all they want to do is name the debtors a nominal party.

MR. NEUMEISTER: Your Honor, but they're not naming the debtor as a nominal party and then also naming the insurer as a codefendant. They're not suing the insurer. They are suing the debtor.

And again, it's clear from the presentation, and I'll get to the point of I don't think the issue of a nominal party is necessarily as set in stone as counsel or their brief will lead you to believe, but it's -- that's not what they're doing. They're trying to adjudicate and liquidate a

prepetition discharge claim against the reorganized debtor.

THE COURT: Okay. But what do you care? Let's assume they do and it's $3 million dollars. You have no liability.

MR. NEUMEISTER: If there's absolutely no liability and there was no risk associated with what the insurance carrier might do in connection with our actions under the policy, maybe we don't but, right now, we don't have that. So, right now, Liberty Mutual has not agreed to accept coverage without the funding of the SIR.

The insurance policy is clear that there is an SIR as a condition precedent to them having any obligation to provide any coverage. So, right now, there is risk. And, again, it's risk that we didn't bargain for under the plan. And, frankly, it can't be lost -- it shouldn't be lost on the court that Mr. Gabriel and his counsel, through Morgan & Morgan, were extremely -- they were not diligent in making known that they wanted to pursue these options.

They didn't file their proof of -- they filed their proof of claim after the claims bar date on the eve of the confirmation hearing. They never reached out to the debtors to let them know that they had an issue with the scope of the discharge injunction or that they intended to pursue claims against the insurance carrier.

But if the debtors had known that, if Mr. Gabriel

had acted timely, maybe that information would have been used by the debtors at the time to determine what they wanted to do with this policy. What they wanted to do in terms of assuming and maybe they'd be able to reach out to the insurance carrier to work out a deal as part of the plan process. That's why it's critical that creditors in Mr. Gabriel's position act timely, and they did not.

It's kind of the worst of all worlds for the reorganized debtor where we had acted or acted during the bankruptcy with no knowledge that Morgan & Morgan or the claimant were going to be seeking this relief. And they made decisions based on the lack of that information. But the lack of that information isn't the fault of the reorganized debtors. It's the fault of the movant.

THE COURT: Well, but the debtors under the plan weren't going to resolve these claims. You said the trust undertook to resolve these claims, and there were other claims.

MR. NEUMEISTER: Well, but the point is, and again I think, almost all the cases that are cited in the movant's paper, the one case on point is the DiPippo decision which is the HC&Y case where there was a post-effective date attempt to effectively name the defendants nominally and to pursue claims only if the policy but there was an SIR so it precluded that relief, that all cases that were adjudicated

or resolved during the case.

So, I think that the cases that were cited under Morgan & Morgan's joinder last night, those were in connection with motions for relief from stay that were timely brought during the bankruptcy case, so the courts were able to kind of resolve those issues upfront prior to confirmation of a plan.

THE COURT: Well, I'm not sure they would have been resolved prior to confirmation because all that was granted was relief from the stay and we know that litigation in state court could take years.

MR. NEUMEISTER: You don't know.

THE COURT: So, I'm not sure.

MR. NEUMEISTER: I'm not saying that one hundred percent this would have been -- the issue would have been resolved, but it could have been. And I can tell that during the bankruptcy case, we got through the bankruptcy case in four months and we were able to resolve some very complex issues during that case and ended up with a full consensual plan supported by all creditors.

None of the creditors that supported the plan knew that there was going to be another personal injury claimant that was effectively going to try and seek a recovery --

THE COURT: Not from the estate, from the insurance policy, again.

MR. NEUMEISTER: Against the insurance policy, but again potentially at risk of putting the reorganized debtor crossways with the insurer and having to effectively -- basically what the movant is saying is that the debtor should breach its insurance policy. Notwithstanding the fact that there is a duty on the debtor to defend the litigation that they should breach that obligation and see what happens. That's what they're saying. That's what they want us to do.

THE COURT: They're saying they'll take the risk of you doing that. They're not saying you have to do that one way or the other, but they'll take the risk.

MR. NEUMEISTER: But they also can't say that it's only their risk, because there's also a risk for the debtor. We just don't know what Liberty Mutual will say if we breach the insurance policy and our obligation to defend.

Sure, we know that the policy expressly provides that it can void coverage, but we don't know what else they might do.

THE COURT: Well, you have the insurance policy. What else might they do?

MR. NEUMEISTER: I don't have that answer. I just don't.

THE COURT: Well then how can it -- how can I find that you might be adversely affected if you do?

MR. NEUMEISTER: Well they can't say that -- I

mean Mr. Gabriel can't say that the insurance carrier will accept coverage or that we're actually here arguing over anything because they --

THE COURT: No, they're saying they're willing to take the risk.

MR. NEUMEISTER: And what the reorganized debtor's position is, is that we are not willing to take the risk of what the -- what could be imposed on the reorganized debtor in terms of obligations, either in terms of defense cost or ending up with a default judgment against the debtor where I just don't know.

Sure, if there's a representation that and an order that Mr. Gabriel can't collect directly against the debtors, fine, but what I don't know is if the insurer, if they end up with a default judgment where they're faced in litigation over coverage if they have any right against us because we'll have been the ones that have breached the policy.

So, Your Honor, I do want to touch base on some of the procedural points that we raised in our brief. And, first, I think it is helpful to just be clear that the discharge -- the injunction under the plan is crystal clear that the claims that Mr. Gabriel has asserted are discharged under the plan and that he is permanently enjoined from taking any of the following actions as applicable against the

debtors, the reorganized debtors, the released parties or the exculpated parties. And, I quote:

"Commencing or continuing in any manner, any suit, action, or other proceeding on account of or respect of any such claims or interest."

And then also:

"Commencing or continuing in any manner, any action or other proceeding of any kind on account of or in connection with respect to those claims."

That is exactly what the movant is attempting to do. They are attempting to whether you call it naming the reorganized debtors nominally or otherwise, they are attempting to commence an action against the reorganized debtor with respect to a discharge claim. It cannot be disputed. That is exactly what they are attempting to do.

So, going to Select Build, in that decision the bankruptcy court does cite a case that says that naming a defend nominally does not violate the discharge injunction. But that was not at all what was at issue in Select Build.

In Select Build, the party that was seeking an action against the insurer was a direct insured or an additional insured of the carrier. So, it was in direct privity to the insurer and so, it was enforcing its rights under the policy against the carrier. It wasn't naming the reorganized debtor in any way in pursuit of that claim. It

was just enforcing its contractual right it had under the policy.

That is completely at odd with what is going on here. The movant doesn't have a direct claim against the carrier. The movant's claim, to the extent it has one, is against the debtor and that is what it's doing. It's seeking -- it is asserting a claim, a discharged claim against the reorganized debtor to then later attempt to seek recovery against the carrier. That is not at all what Select Build held. That case is not persuasive and it's not applicable here.

So, I'll get quickly to the timing issues with respect to the relief that's being sought.

The movant is requesting relief under Rule 60(b) and Bankruptcy Rule 9024. So 9024 makes clear that if there's any attempt to revoke a confirmation order, it must be brought within the limits of Bankruptcy Code Section 1144.

We contend that in an attempt to basically vitiate the and get around the injunction and the plan and confirmation order then that is an attempt to revoke a confirmation order. I think that Your Honor's decision in Vencore in terms of the releases that were provided to nondebtor third-parties is extremely persuasive here and applicable, particularly given that in connection with the confirmation order, there were findings that the injunctions

being granted under the plan were critical to the restructuring and part of the decision to confirm the plan.

And so, if you're attempting to revoke a confirmation order that order -- that attempt can only be based on fraud and it can only be based -- (indiscernible) for 190 days of the confirmation order. That timing has clearly lapsed.

In terms of the other relief, I think that counsel said during his presentation is what they're attempting to do is modify the discharge under the plan. I think he specifically used the word modify.

Well under Bankruptcy Code Section 1127 only the plan proponent has standing to seek to modify a plan. And you can't seek to modify a plan after it's been substantially consummated. There can be no dispute that the plan that went effective February 15th, 2018, over a year and a half ago, has been substantially consummated.

And so, there simply is no statutory or legal basis to modify the clear and unambiguous discharge and injunction language under the plan to grant movant's relief.

In terms of notice, here, the -- during the bankruptcy case, the claimant, through its then counsel Morgan & Morgan, I don't think there's any dispute or I haven't heard anything that Morgan & Morgan was not counsel for the claimant for all the key periods, received notice at

the address that they told the debtor or the carrier of the debtors to provide notice to with respect to the claim.

There was a claim notice that was provided to Liberty Mutual prepetition that specifically said to provide notice at the Tampa address, Tampa office, I'm sorry, for Morgan & Morgan. All notices, the bar date notices, the notice of the confirmation hearing, the notice of confirmation clearly disclosed that the plan and injunction language in the plan was being sought. It was all served on counsel.

And I think that Judge Walsh's decision in Grand Union is on point here. There he addressed --

THE COURT: Well, let me ask you a question.

MR. NEUMEISTER: Go ahead.

THE COURT: The proof of claim in this case that said served Morgan & Morgan was filed February 6th of 2018.

MR. NEUMEISTER: Correct.

THE COURT: The confirmation order was entered February 7th of '18.

MR. NEUMEISTER: Correct.

THE COURT: So, one day later. So before you serve the plan and before you serve the bar date order, there was nothing saying serve Morgan & Morgan.

MR. NEUMEISTER: That's not correct, Your Honor. We attached to our opposition a claim notice that they had

provided. It's the only, I believe, correspondence that we have from them. It's Exhibit 2 to our opposition.

THE COURT: To your opposition. What opposition?

MR. NEUMEISTER: The opposition we filed to the motion.

THE COURT: Which is B?

MR. NEUMEISTER: It is B.

THE COURT: Objection, all right. So Exhibit what to that?

MR. NEUMEISTER: Exhibit 2.

THE COURT: March 4, 2019 email?

MR. NEUMEISTER: No, it's -- oh, I'm sorry. That's what is confusing. There are two declarations. There's one from me, one from Ms. Cuje, who is on the line. It's attached to Ms. Cuje's declaration. It's right after the insurance policy. Right before my declaration, Your Honor.

I can bring it up, if you like.

THE COURT: The March 3, 2016 letter from Morgan & Morgan?

MR. NEUMEISTER: Correct. And if you go to the second page of that letter in bold underline, "Please direct any further communications with our client regarding this matter to my case manager, David Carter, in our Tampa office." And the Tampa office, there's an address at the --

in the letterhead that is One Tampa City Center, Tampa, Florida.

And the proof of claim that was filed lists technically a different street address. But if you do a quick search on the internet it's very clear that it's -- the is one and the same. And that is the address that all correspondence with respect to the case was served on.

THE COURT: And does your certificate of service of the bar date show that it was served on Morgan & Morgan?

MR. NEUMEISTER: Yes.

THE COURT: As well as the plan documents?

MR. NEUMEISTER: Yes.

THE COURT: Okay.

MR. NEUMEISTER: So for that reason, the argument that the confirmation order is void as to them and it may be discharged is void as to them for lack of service is just not right.

They were served -- the debtors in the bankruptcy case took reasonable efforts, calculated efforts to apprise Mr. Gabriel the pendency of the action in their opportunity to object. They failed to do that.

In fact, we didn't hear from them until March of this year and that request came from new counsel asking about their claim and its directed to me personally. And I told them that the claim had been disallowed because the plan

trustee had objected, served them on the address listed in the proof of claim. They didn't respond. And there was an order disallowing that claim.

I informed them of the SIR and that we would not -- and that the debtor's position is that their claim is discharged under the objection, the very position we're taking in our opposition now. And the response was that they wanted the policy because there may be a malpractice claim against Morgan & Morgan.

Your Honor, that's fine but it doesn't involve us. But then they waited another seven months to bring the instant motion. So any attempt to seek relief under Rule 60(b) has to be brought within a reasonable time. They absolutely have not done so. The claimant, in this case, through counsel, has done nothing but just effectively sit until now.

And in that time period, reorganized debtor confirmed their plan, had continued to attempt to restructure their business --

THE COURT: When were you contacted by new counsel for the creditor?

MR. NEUMEISTER: March 2019.

THE COURT: Well that was a year after confirmation.

MR. NEUMEISTER: Correct.

THE COURT: Okay. So in the interim, you didn't confirm.

MR. NEUMEISTER: Fair enough. The interim from the beginning of the case when they filed their proof of claim to present, so that's a fair point.

So, simply put, the delay it precludes the movant from having any grounds for relief under Rule 60(b) because their time wasn't reasonable. But, at the same time, it's prejudice to reorganized debtors for reasons I mentioned before with respect to making a decision in terms of whether to assume the policy.

We didn't know that this claim was out there or that -- we knew that there was a notice of claim submitted but we didn't know that they were prosecuting the claimant. The injury happened, I think, a year and a half prior to the petition date, and there had been no lawsuit commenced by then.

Personal injury claimants submit demand letters and then just sit on them. We didn't know that they were going to be seeking this relief. And $100,000 dollars it may not be a lot if you're Kmart, but it is large for Macaroni Grill. I mean Macaroni Grill is not --

THE COURT: Did any PI creditor get relief from a stay in this case?

MR. NEUMEISTER: No.

THE COURT: None?

MR. NEUMEISTER: There was one motion that was filed in the case seeking similar relief. We opposed on the same ground and they agreed with our position that -- I mean they agreed --

THE COURT: This is post-confirmation.

MR. NEUMEISTER: No, this was during the case. There was one motion for relief from stay filed during the case that we opposed asserting similar grounds as to why relief from stay should not be granted based on the SIR. It was not finally adjudicated. The movant ultimately withdrew their motion.

THE COURT: Did you resolve the amount of the claim?

MR. NEUMEISTER: That I don't know, Your Honor. In terms did we stipulate to an allowed amount as condition?

THE COURT: Yes.

MR. NEUMEISTER: That I don't know. But that's also not what the movant is seeking here.

So with respect to the SIR issue, I think that you've heard counsel now that there's $100,000 dollar SIR that effectively what it requires is it requires the debtors to come out of pocket $100,000 dollars, either in defense or liability before Liberty Mutual has any obligation to assume coverage of the claim.

That makes it markedly different from a deductible. A deductible, the insurance carrier generally has the obligation to provide coverage at the outset of the claim, but they're not liable for that $100,000 dollar amount. That's markedly different because under an SIR, the funding of the $100,000 dollar self-insured portion, it's a condition precedent to the carrier having any obligation.

So, I think that the decision -- (indiscernible) to New York's decision in the DiPippo case is -- really if there's a case that's on all fours here it's this one. I meant that case the tort claimant sought to bring a post-effective lawsuit against Kmart for a claim that arose during the case. The claimant had failed to timely file an administrative claim; same here. The claimant failed to timely file a proof of claim.

Like our case, Kmart's Chapter 11 plan contained an injunction that precluded the claimant from bringing an action against the reorganized debtor. The claimant sought to get around the injunction by saying that some or all of the wrongful conduct was covered by insurance. The court rejected the argument because Kmart's policy had an SIR which would have required Kmart to come out of pocket before triggering insurance.

And I think that the language that the court used is helpful here and I'll quote, the court held that:

"Because Kmart's debt has been discharged in bankruptcy, there is no money to cover plaintiff's claim. Moreover, if the action against Kmart were permitted to proceed, it would have to pay litigation costs which is contrary to the fresh start policy of the Bankruptcy Code. That's the risk.

And I get Your Honor's point that the movant is willing to accept the risk that there might not be coverage but the fact is that there's also risk on the debtor, on the reorganized debtor, and that is not what is permitted under the policy, that's not what permitted -- I'm sorry; that's not what is permitted under the plan and it should not be permitted here.

And to distinguish the case in the movant's reply they distinguish the case by saying well, in that case there was a $2 million dollar SIR versus $100,000 dollar SIR. This isn't an evidentiary hearing but I think we can all acknowledge that Macaroni Grill was not Kmart in terms of cash flow.

So, a $2 million dollar SIR and $100,000 dollar SIR there is a likely basis for that, but also the Kmart decision cited favorably a case that came out the same way that had a $250,000 dollar SIR. So, I don't think the difference and size of the SIR is relevant here.

And I do want to point out a decision that the

movants used a lot in their motion. It's the Seventh Circuit's decision in Hoxford v. Pettibone (phonetic). And so, in that case, and I point it out because they relied on the motion but it actually weighs in favor of our argument here.

That case did involve an SIR so it is similar to our case here and in that case tort claimants were granted relief from the discharge to pursue litigation against the reorganized debtor which is what movant is seeking.

However, in that case, the plan implemented several of what the court referred to as step-up agreements, the debtor's carrier. Under the plan, the insurers agreed to defend Pettibone, the debtor, and pay the personal injury claims up to the policy limits after Pettibone had fully met its SIR.

Under the plan, personal injury claimants are divided into groups of policy year and they share pro rata, the burden of Pettibone's SIR, any unsecured claims against the estate for their shares of the SIR.

The movant in that case was only granted relief against the discharge injunction to pursue that litigation pursuant to the confirmed plan and subject to the payment conditions and procedures imposed on timely claimants.

Now that's exactly what Judge Carey did in the Building Materials Holding Corp. It's the same idea is that

in granting relief from the discharge injunction or from stay that if you're going to proceed against a policy against the SIR, it needs to be in a fashion that makes absolutely clear that the reorganized debtor are not going to have a burden with respect to that SIR amount.

And right now, the movant hasn't agreed to come out of pocket dollar per dollar to the extent that the debtors have to fund any amounts up to the SIR. But that's exactly what was required in Hoxford which is the case the movants cite and it's the structure that Judge Carey granted in Building Materials Corp.

Finally on -- well all I would say on Coach America is that that case, I think that the movants reference it as a deductible or an SIR plan. At least, the transcript that's attached to the motion or, I'm sorry, to the reply it only references a deductible. It's on an SIR policy or, at least, the record doesn't suggest it's an SIR policy, so suggesting to the contrary. It's a market distinction.

Your Honor, for that reason, I believe that the motion should be denied. It is procedurally flawed. It's not permitted under the Code or the rules and it is as a result of the SIR. It should not be permitted under the plan injunction approved by Your Honor. Thank you.

THE COURT: Thank you.

MR. LOIZIDES: May I be heard briefly, Your Honor?

THE COURT: You may.

MR. LOIZIDES: Your Honor, there's been some focus on whether or not we are, in fact, seeking to sue the debtor as a nominal party and counsel has pointed out that, in fact, we would sue the debtor and not the insurance company.

I believe in this context, it's sort of become a term of art when you are suing the debtor in order to recover insurance proceeds. That is suing the debtor as a nominal party.

So or whether or not we name the insurance company or not, we would be suing the debtor as a nominal party because we would not be seeking to recover anything from the debtor. And there are many many cases including Harkers and many others that say that that is not a violation of the discharge.

Your Honor, it is true that there is a difference between Select Build and this case because that was a direct claim against the insurance company. However, again, there are many cases including Harkers that say that's a distinction without a difference, just to quote from our brief, the mere fact that a claimant is unable to participate in a reorganization plan; however, does not relieve any other entity from liability for the debt nor does it negate the existence of the debt permitting suit to obtain a declaration of liability against a debtor is not equivalent to

authorizing recovery of a barred claim in a bankruptcy proceeding.

Your Honor, I would also point out that to the extent -- again, I keep coming back to this -- there is any conceivable adverse effect here, it is by virtue of the assumption of the insurance contract.

The debtor's position does strike me as kind of odd and that is that they're saying that if they had known that we were going to pursue this claim earlier that they would have rejected the contracts and if they rejected the contracts then we would have been entitled to relief.

It just seems like a very strange position that they assume a contract that only covers prepetition claims. And in any event, Your Honor, they knew about this claim, not just because the claim was filed beforehand, but this was actually scheduled. It was scheduled and they amended the schedule, so they knew about it.

And so, again, I think that essentially what the argument comes down to is there is a conceivable adverse effect that they haven't really defined very clearly under the policy by virtue of the fact that they agreed to assume these policies knowing about the claim.

On the DiPippo decision -- I'm sorry, Your Honor.

THE COURT: Go ahead.

MR. LOIZIDES: On the DiPippo decision from the

Southern District, our position was not just the extent of the adverse effect. It was the fact that the claimant there did not seem to -- there's nothing in the decision that suggests the claimant there had a claim for over $2 million dollars. Okay.

I've had that situation come up before with very large SIR. Somebody will have a minor injury. Their pre-litigation document showed $25,000 dollars in damages and somehow they try to -- at the end of the day, we tend to drop those or settle for an unsettled claim because you know if you're not going to get more than the million dollar, $2 million dollar SIR, what's the point.

This is not a case like that, Your Honor. My client filed a claim for half a million dollars. These were severe injuries and, therefore, I don't think that that issue is presented here.

Also, Your Honor, I don't know what the -- I don't know the state of appellate law in the Second Circuit on this. Here, we have the Mecatear decision from the Third Circuit which says that insurance is not -- pursuit of insurance is not subject to the discharge and that's consistent with the Seventh Circuit as well.

So, I don't know how instructive the southern district's cases are on this point.

THE COURT: Is there a direct-action statute that

allows this creditor to sue the insurance company directly?

MR. LOIZIDES: In Florida, Your Honor, my understanding and counsel for Morgan & Morgan would know better than I do is that under these circumstances that would not be the case that you are required to name the debtor in this case nominally in order to recover the insurance proceeds. That's my understanding. That specifically researched that point.

MS. IURILLO: This is attorney Camille Iurillo. That is correct. It's an indirect action state. You cannot sue the insured directly.

THE COURT: Okay.

MR. LOIZIDES: And, finally, Your Honor, just going back to the Select Build on what Judge Carey. Judge Carey did require something in the on what Judge Carey. Judge Carey did require something in the Syntax motion but clearly in the reported decision, there was no requirement to reimburse anybody.

And as I said, there I do understand it was a direct claim but right in Judge Carey's decision, he cites to other cases that hold that even where you're suing the debtor nominally that it's not subject to the discharge.

Unless the court has any questions that's all I wanted to emphasize.

THE COURT: Thank you.

MS. IURILLO: Your Honor, Camille Iurillo from Morgan & Morgan. I know that Your Honor stated that Morgan & Morgan cannot make an appearance as to the joinder.

Since I am in the courtroom from Morgan & Morgan, I would ask the court not to rule on the notice issue or allow Morgan & Morgan to be heard briefly. I defer to Your Honor but it is a ruling that would negatively impact Morgan & Morgan directly.

THE COURT: I'm not going to allow you to be heard. Sorry.

MS. IURILLO: Thank you, Judge.

MR. NEUMEISTER: Your Honor, and I'll be very brief.

Again, the concern is, is that given that it is -- that under Florida law the litigation would have to be commenced against the debtors. It's undisputed.

If the debtor ends up defaulting, there could be a judgement against them. That could be reputational risk that could end up harming them in other ways. Again, it's uncertain what the action by the carrier against the debtor could be. We just don't know.

But the fact of the matter and I keep want to come back to is this is an action that -- this is a lawsuit that the movant is seeking to assert against the reorganized debtor late that they've been sitting on for a couple of

years now that is going to attempt to get them greater treatment than any other unsecured creditor in the case.

THE COURT: How does it give them more?

MR. NEUMEISTER: How does it give them more?

THE COURT: Than any other unsecured creditor?

MR. NEUMEISTER: Well to the extent --

THE COURT: They're only getting to the extent of insurance.

MR. NEUMEISTER: They're only getting to the extent of insurance but they would be getting an end-run around the structure that was negotiated under the plan which was to pay unsecured creditors from a set trust amount.

THE COURT: Except for PI creditors who are entitled to go against the insurance.

MR. NEUMEISTER: Absolutely. If they wanted to, they could have attempted to do so; although, again, they could have attempted to do so. I think our argument is that as a result of the SIR which could impose obligation on the reorganized debtor that they wouldn't be permitted to do so without baking some sort of resolution into the plan.

Again, because this is an SIR there is risk to the reorganized debtor. The plan contemplated a clean break between the reorganized debtor and the resolution of unsecured claims.

THE COURT: Why did you assume the policy then?

MR. NEUMEISTER: We assumed the policy based on the information that we had available to us that we --

THE COURT: Regardless of what information you had, why did you assume the policy?

MR. NEUMEISTER: We wanted to make sure that we were going to have ongoing coverage for claims. And, again, we didn't specifically identify the -- we didn't specifically identify on the list of assumed contracts this specific policy here. We list the general liability policy for Liberty Mutual which would include the policy that was pending during the case. And we wanted to be absolutely clear that the debtors would continue to perform under -- the debtors would be continuing to perform under the policy and, in exchange, they didn't want to have any gaps in the coverage.

THE COURT: So, you assumed policies that cover prepetition claims as well as post-petition claims?

MR. NEUMEISTER: Yes, Your Honor.

We assumed the contract with the policy with the insurer. We assumed that policy as it was drafted. We didn't assume or negotiate to allow prepetition personal injury claims to get around the discharge injunction to then be pursued that could harm the debtor because we knew that there was an SIR under the policy and that the debtors could not be -- couldn't be an action against the reorganized debtor for

their amount of the policy. But as part of that, they can't name the reorganized debtor to pursue a claim under the policy. They just can't unless that SIR has already been hit.

So, we assumed the policy as part of kind of the general structure that was provided under the plan. And, again, the discharge and plan is standard language in this district as far as I understand in terms of making clear that a discharge claim cannot be asserted against a reorganized debtor in any manner. That's what it says.

The movant is seeking to unwind that language trying to and, in doing so, as part of that they are late in doing so. So even without getting to the merits of that issue, the fact of the matter is that their motion is procedurally flawed because it's untimely.

And, Your Honor, if you have any questions, I'm happy to respond to them but that concludes my presentation.

THE COURT: No.

MR. NEUMEISTER: And I would note just as a matter of just housekeeping we do have two declarations, one from Ms. Cuje who's on the line, one from myself. I don't think anything is in material dispute. I would move those into evidence.

MR. LOIZIDES: Your Honor, actually, the declarations do contain some hearsay statements and some

things that are not supported. I think that the -- unless there's a disagreement about this, I think the only thing that's really important in the declarations is the policy. We're not questioning the authenticity of the policy, if that will help.

If there's something specific, other than that, in the declarations that needs to be part of the record for today's purposes, I'm happy to talk about that, but I'm a little reluctant to agree to everything that's in the declarations which, of course, are hearsay in a non-evidentiary hearing.

To be clear, I'm not trying to be difficult. If it's something that's non-controversial, I'll certainly stipulate to it. But I have stipulated before today to the authenticity of the policy, so I'm not (indiscernible) with that.

MR. NEUMEISTER: Well, I think that the discussion that had been had prior to this hearing was that, again Ms. Cuje would be on the line, that she would not have to be submitted to cross-examination in connection with her declaration.

I don't think anything in these declarations are necessarily hearsay. I don't think anything is necessarily being offered to prove the truth of the matter asserted. And I think everything is effectively non-confrontational. And I

think that there are issues in the declarations and are relevant here today, for example.

Your Honor inquired as to kind of what address we were using and the kind of the basis for that address for purposes of providing notice. That is in connection with the letter that's attached as Exhibit 2 to the Cuje declaration, so I do believe that the declaration should be admitted into evidence as part of the record.

THE COURT: Well, I will admit Ms. Cuje's declaration including Exhibit 2 which is the letter from creditor's counsel, but I'm not going to admit the Wikipedia article attached to your declaration and I'm not sure -- any objection to the other exhibits which are the emails, the two emails?

(Declaration of Maury Cuje and Exhibit 2, admitted into evidence)

MR. LOIZIDES: Your Honor, as I did raise with Mr. Neumeister previously, we don't object to the authenticity of those documents, but to the extent that any of that is relevant, I think my understanding is there were also phone conversations and other emails.

My view, frankly, Your Honor, is it's completely irrelevant, but if for some reason this is case dispositive or something, we would want to have -- we would need live testimony to put those things in context because, as I said,

I'm struggling to see why that's even relevant.

I just want to mention one other thing about Liberty's Mutual position, to the extent that the court is going to deny the motion based on that declaration, I would want something in writing from Liberty Mutual just to protect my client and myself, quite frankly, Your Honor, if that's where we're going.

But, as I said, I'm certainly not trying to cause unnecessary expense to come back here for any reason. I think that the communications -- but the email communications were just not relevant. If they are relevant, we need an expanded record.

And with respect to Liberty Mutual's position, I don't really that that's their position. It wouldn't surprise me if it wasn't. But I would like something in writing from them if that's where we're going. Thank you, Your Honor.

THE COURT: Well then, I guess the objection is to paragraph five of Ms. Cuje's declaration.

MR. NEUMEISTER: Again, I don't view paragraph five as inadmissible hearsay because I don't believe it is being offered to prove the truth of the matter asserted of anything that Liberty Mutual is necessarily saying.

THE COURT: So why is it being offered?

MR. NEUMEISTER: Just as a matter of fact that

Liberty Mutual has not accepted --

THE COURT: Well that is hearsay. What they told you that they're not accepting defense, isn't that hearsay?

MR. NEUMEISTER: Well, no -- well it's an exception in the sense that what's -- the reason it's relevant is just the fact that the statement has been said, not necessarily that it's true. I think it's a fine distinction but, again, just the fact that it's said is the reason it's relevant and so, it's not necessarily (indiscernible) for the truth.

MR. LOIZIDES: Your Honor, I think its clearly hearsay, it would have to be true. But putting that aside for today's purpose to make our position clear even if that's true, we still think we're entitled to the relief. Okay.

I would not want to come back to have an evidentiary hearing on that because, as I said, I don't really doubt that that is true. It's just that if that's the only thing standing between the court denying the motion then I would want something in writing.

Our position is for today's purpose anyway even if that allegation is true, it shouldn't matter. That's our position.

MR. NEUMEISTER: I think to hopefully resolve that issue, we're fine submitting with respect to the (indiscernible) declaration, one through four, and then as

parties for their rights on five.

MR. LOIZIDES: That’s fine.

MR. NEUMEISTER: If that pleases the court.

THE COURT: All right, well let me do this. Let me rule. I am going to grant the motion.

To the extent -- well, first of all, the plan or reorganization in this case does not grant an injunction or release of the insurance companies. To the extent it prevents the institution of a suit against the debtor, I will grant relief from it because the creditor has agreed it will not seek to collect any judgment from the debtor nor require that the debtor defend.

And I’m just relying on the many decisions that pre- and post-confirmation held that PI creditors should be permitted to pursue liquidation of their claims and to collect from insurance proceeds.

The debtor’s assertion that this is going to hurt the debtor really does not convince me; a) to the extent that the debtor refuses to defend. Presumably, the insurance companies will take whatever action it can or cannot. And the creditor has said it will take the risk that the insurance company will declare that it has no obligation under the policy to pay any such claim.

To the extent that the insurance company does defend and raises a claim against the debtors for breach of

the insurance policy, I think that that is simply a result of the debtor's conscious decision to assume that policy. And in that respect is similar to the Select Build case.

I think the Third Circuit would allow it. The discharge is not so broad as to protect the insurance companies. And I won't opine as to whether or not they're required to defend or not. But the creditor is taking that risk.

MR. NEUMEISTER: Thank you, Your Honor.

THE COURT: All right, present a form of order to me under certification of counsel.

MR. LOIZIDES: I'm sorry, Judge. Is the order that we've attached not sufficient or would you rather have another --

THE COURT: Let me see.

MR. LOIZIDES: I haven't looked at it in a while. I just --

THE COURT: Nor have I.

UNIDENTIFIED SPEAKER: If it pleases the court, perhaps, counsel can consult on the form of order that will comport with the record and just make sure it works and then submit an order.

THE COURT: Okay. Yes, submit it under certification of counsel after talking with debtor.

MR. LOIZIDES: Okay. Thank you, Your Honor.

THE COURT: All right, we'll stand adjourned then.

I think we're done. Are we done?

MR. LOIZIDES: The sealing motions. There's sealing motions.

THE COURT: Yeah what exactly was confidential?

MR. NEUMEISTER: It's the insurance policy. We have a motion to seal with respect to any quoted language for the insurance policy, given that the insurance policy, I believe, is continuing -- rolls over for future years. We have a concern about having that on the public record.

THE COURT: Okay.

MR. NEUMEISTER: But that's the extent of the motion to seal.

THE COURT: Okay. I will grant the motion to seal.

MR. NEUMEISTER: Thank you for the reminder.

Thank you, Your Honor.

THE COURT: All right, we'll stand adjourned then. Thank you.

MR. NEUMEISTER: Thank you.

MR. LOIZIDES: Thank you.

(Proceedings conclude at 11:55 a.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Mary Zajaczkowski December 10, 2019
Mary Zajaczkowski, CET**D-531